GENERAL WAREHOUSEMEN'S UNION LOCAL 852, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff,

v.

RELIANCE ELECTRIC COMPANY, Defendant.

No. 72 Civ. 1045.

United States District Court, S. D. New York.

Dec. 28, 1973.

**1304**

Jack Last, New York City, for plaintiff; J. Trubee Miller, of counsel.

Dillon & O'Brien, New York City, for defendant; James McGarry, New York City, of counsel.

OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, District Judge.

Plaintiffs, General Warehousemen's Union Local 852, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called the "union"), sues defendant, Reliance Electric Company (hereinafter called "Reliance") to compel Reliance to extend certain insurance benefits to the members of the said union. The defense is a general denial.

The central basis of plaintiff's claim is founded upon a certain letter dated June 14, 1971 which was as follows:

"Mr. John Cook, Business Agent
General Warehousemen's Union Local 852
Room 851
130 West 42nd Street
New York City, New York

Dear Mr. Cook:

This letter will confirm our understanding that if improvements are made in employee benefits to the Field Service Organization during the term of this Agreement, namely, Group Insurance, Pensions, Holidays, Vacation or Mileage Plan, that such improvements will be extended to the New York-Newark bargaining unit.

Very truly yours,

(Sgd) Harold A. Fye

Harold A. Fye

Director of Labor Relations
Reliance Electric Co., Toledo
Scales & Systems Division"

(See Ex. 4.)

After hearing the testimony of the parties, examining the exhibits and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This court has jurisdiction over the subject matter and parties to this action. (Section 301 of the Labor Management Relations Act of 1947, 29 U.S. C.A. § 185.)

2. At all times relevant to this action, Toledo Scales and Systems Division of Reliance Electric Co. ("Toledo") in its New York and New Jersey offices had certain employees represented by the union ("union employees") and other workers not represented by the union ("non-union employees"). (10–11, 59; Ex. 3; Answer ¶ 1.) [1] At all times relevant to this action Reliance was engaged in an industry affecting interstate commerce. (59.)

3. Toledo and the union entered into a collective bargaining agreement dated November 20, 1969, expiring on June 16, 1971. (Court's Ex. 1.) [2] During the Spring of 1971 the parties conducted negotiations, as a result of which they executed a new collective bargaining agreement dated August 31, 1971, effective as of June 17, 1971, for a three-year period (hereinafter referred to as the "agreement"). (3, 7–8; Exs. 2, 3.) [3] Prior to executing the agreement, the director of labor relations at Toledo transmitted a letter, dated June 14, 1971 and signed by him, to the business agent of the union. (Ex. 4.) This letter was as follows:

> "This letter will confirm our understanding that if improvements are made in employee benefits to the Field Service Organization during the term of this Agreement, namely, Group Insurance, Pensions, Holidays, Vacation or Mileage Plan, that such improvements will be extended to the New York-Newark bargaining union." (Ex. 4.)

4. As used in the said letter of June 14, 1971 (Ex. 4):

(1) "Field Service Organization" referred to all employees working in Toledo's New York and New Jersey offices. Counsel for plaintiff and for defendant each elicited this fact without objection by the other. (10–11, 81.)

(2) "[T]his Agreement" referred to the agreement effective June 17, 1971. (Ex. 3.) The court so finds this from testimony that was elicited without objection and from facts admitted in the pleadings. (7–8; Ex. 2; Complaint, ¶ 2; Answer ¶ 1.)

(3) "Group Insurance" was a policy paid for in full by Toledo which covered Toledo's union and non-union employees. (75–76, 111–112, 115–116, 127–128; Ex. Q); it did not refer to the voluntary group accident policy described below. (75–76, 115–116.)

(4) The "New York-Newark bargaining unit" describes the union employees represented by the union and working at Toledo's New York and New Jersey offices. (79–81, 137–138.)

5. A voluntary group accident policy, prior to April 1, 1971, was available to Toledo's non-union employees willing to pay the full cost for coverage and otherwise eligible. (30, 75, 76, 116.) However, Toledo's union employees were ineligible for coverage under the said policy. (27–28, 30, 75, 76, 116, 135; Exs. A, R.) The insurance carrier extended the voluntary group accident policy during 1971 to provide an in-hospital income benefit not previously included. The in-hospital income benefit thus became effective April 1, 1971 automatically, without any action by the employee, and without added cost to the employee. (31, 34–36, 57, 60, 76, 103, 107; Ex. 10.)

---

1. Unless otherwise indicated, the numbers in parentheses refer to the stenographic minutes of the trial before this court on October 17 and 18, 1973.

2. After the close of testimony the court admitted into evidence as Court's Exhibit 1 the collective bargaining agreement dated November 20, 1969 and due to expire June 16, 1971. Before the court admitted the said document into evidence as Court's Exhibit 1, counsel for plaintiff and defendant each informed the court that they had no objection to the court's admitting the said document.

3. The agreement included a no-strike, no-lockout clause, but omitted to provide for mandatory arbitration. (Ex. 3.)

Moreover, the insurance carrier opened enrollment in the voluntary group accident policy, including the in-hospital income benefit, during March 2–16, 1971 to non-union employees not then covered, for coverage effective April 1, 1971. (88, 91, 99–101, 107; Exs. 7, M, N, P.) At all relevant times after April 1, 1971 the voluntary group accident policy included the said in-hospital income benefit. (Ex. 10.)

6. During the period of November to December 15, 1971 the insurance carrier again opened enrollment in the voluntary group accident policy to non-union employees not then covered for coverage effective January 1, 1972. (Exs. 5, O.) The purpose of this additional enrollment period was to promote sales of the voluntary group accident policy to uninsured non-union employees for enrollment as of January 1, 1972. (44, 74.) Accordingly, during November 1971 the company notified its non-union employees by a letter dated November 1971 "that effective January 1, 1972 the insurance carrier is incorporating an outstanding new benefit for employees and dependents insured under Accident Policy OKV–1477 at no additional cost." (43–44; Ex. 5.)

7. As used in the said letter dated November 1971 (Ex. 5):

(1) "[E]ffective January 1, 1972" referred to the fact that the in-hospital income benefit was effective on that date for non-union employees enrolling under the policy for the first time (44–45);

(2) The expression, "an outstanding new benefit," was a merchandising term which referred to the in-hospital income benefit effective April 1, 1971 (44, 46–47, 83);

(3) "Accident Policy OKV–1477" was the voluntary group accident policy which covered the non-union employees of Reliance working for the company in divisions other than Toledo. (132, 135; Exs. 5, 10.)

8. Plaintiff submitted no credible evidence to show that the parties intended the letter of June 14, 1971 (Ex. 4) or

the agreement (Ex. 3) to extend the in-hospital income benefit to union employees. Nor is there any intrinsic evidence in the letter to that effect. Plaintiff submitted no credible evidence that the parties intended the letter of June 14, 1971 (Ex. 4) or the agreement (Ex. 3) to extend to union employees any benefit not known by the union to be in existence at the time the parties negotiated and executed the agreement. Finally, plaintiff submitted no credible evidence that the in-hospital income benefit was an improvement in employee benefits within the meaning of the letter of June 14, 1971. Under the circumstances herein set forth defendant has not breached its obligations under the letter of June 14, 1971 (Ex. 4) or the agreement (Ex. 3).

## DISCUSSION

Federal law governs the rights of the parties under the agreement (Ex. 3) and the letter of June 14, 1971. (Ex. 4.) Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Plaintiff contends that defendant breached its obligations under the letter of June 14, 1971 (Ex. 4) and the agreement (Ex. 3) by reason of Toledo's failure to offer the in-hospital income benefit to its union employees in the following respects:

■ *First:* Plaintiff urges that the in-hospital income benefit, as described and set forth in Exhibit 5, was an improvement in employee benefits within the meaning of the "agreement" and thus obligated defendant to offer the in-hospital income benefit to the union employees. (Plaintiff's Proposed Conclusion of Law No. 3.) This argument is clearly erroneous. In order to resolve plaintiff's argument, I must determine what defendant intended by "improvements * * * in employee benefits" as used in the letter of June 14, 1971. (Ex. 4. See Finding of Fact 3.) The language of the letter of June 14, 1971 unambiguously required Toledo to make

**1307**

available to its union employees improvements in the *group insurance* policy made available to its non-union employees *during* the term of the agreement dated June 17, 1971. (Ex. 3. See Findings of Fact 3, 4.) However, the in-hospital income benefit was effective as an addition to the *voluntary group accident* policy *prior* to the term of the agreement, i. e., April 1, 1971. (Finding of Fact 5.) Since the in-hospital income benefit was not made available *during* the term of the agreement, it was not an "improvement in employee benefits" within the meaning of the letter of June 14, 1971 (Ex. 4) and defendant was not obligated to extend it to the union employees.

*Second:* Plaintiff urges that the "parties" intended, by the letter of June 14, 1971 (Ex. 4) and the agreement (Ex. 3) to extend to the union employees "any benefit not known by * * * [the union] to be in existence at the time the collective bargaining agreement was negotiated and executed." (Plaintiff's Proposed Conclusions of Law Nos. 2, 4.) This argument is clearly erroneous.

█ █ In a suit under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, charging breach of a duty created by collective bargaining agreement, it is plaintiff's burden to prove, by a fair preponderance of the credible evidence, that defendant breached the collective bargaining agreement. Local 149, American Fed'n of Technical Eng'r v. General Electric Co., 250 F.2d 922, 929–930 (1st Cir. 1957); Lodge 743, Int'l Ass'n of Machinists v. United Aircraft Corp., 299 F.Supp. 877, 890–891 (D.Conn.1969). Likewise, in a suit charging breach of contract, it is plaintiff's burden to prove, by a fair preponderance of the credible evidence, that defendant breached its promise.

█ Nothing in the letter of June 14, 1971 (Ex. 4) or the agreement (Ex. 3) supports the union's argument that the "parties" intended, by the letter of June 14, 1971 (Ex. 4) and the agreement (Ex. 3), to extend to the union employees "any benefit not known by * * * [the union] to be in existence at the time the collective bargaining agreement was negotiated and executed." (See Plaintiff's Proposed Conclusions of Law Nos. 2, 4.) Moreover, there is no credible evidence that the "parties" intended by the letter of June 14, 1971 (Ex. 4) and the agreement (Ex. 3) to extend to the union employees "any benefit not known by * * * [the union] to be in existence at the time the collective bargaining agreement was negotiated and executed."

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the persons and subject matter of this action.

2. Federal law governs the rights of the parties to this action.

3. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant, Reliance Electric Co., breached the collective bargaining agreement (Ex. 3) or the letter dated June 14, 1971 (Ex. 4).

4. Defendant is entitled to judgment dismissing the complaint, together with costs and disbursements in this action.

Settle judgment upon notice pursuant hereto.